UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

In re

LAWRENCE D. HARTUNG and
LORINE HARTUNG,

    Debtors.

Case No. 12-21920

Chapter 13

---

UNIVERSAL RESTORATION SERVICES, INC.,

    Plaintiff,

v.

LAWRENCE D. HARTUNG and
LORINE HARTUNG,

    Defendants.

Adversary No. 12-2359

---

MEMORANDUM DECISION ON PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT

---

  The plaintiff, Universal Restoration Services, Inc., brought this adversary proceeding under 11 U.S.C. §§ 523(a)(2)(A) and (a)(4), objecting to the dischargeability of an obligation of $133,037.96, plus interest, costs and attorney's fees, incurred by the debtors, Lawrence and Lorine Hartung. After the defendants filed their answer, the plaintiff filed[1] its second motion for partial summary judgment as to Counts II and III of the adversary complaint and pursuant to 11 U.S.C. § 523(a)(4). The defendants opposed the motion and the parties filed briefs supporting

---

[1] The plaintiff first moved for summary judgment of its section 523(a)(4) cause of action under a theory that a constructive trust had been created, which the trial court had found, and the debtors violated their fiduciary duty. This motion was denied by the judge previously assigned to the case because case law in the Seventh Circuit and in this district have interpreted the exception to discharge under section 523(a)(4) to require the existence of a trust prior to any wrongdoing by the debtor, and a constructive trust arises upon a wrongful act by the debtor.

their respective positions. This Court has jurisdiction under 28 U.S.C. § 1334 and this is a core proceeding under 28 U.S.C. § 157(b)(2)(I). This decision constitutes the Court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.

## BACKGROUND

Unless otherwise noted, the following material facts are uncontested. In June 2008 the debtors' residence in Caledonia, Wisconsin sustained substantial flood damage. The debtors' insurance policy required indemnification to the debtors for any and all expenses they became liable for in mitigating water damage to the structure of the residence – but not any of their personal property – and expenses incurred to restore the structure to its pre-water loss condition, subject to the policy's terms, limits and exclusions.

On or about June 16, 2008, the debtors hired the plaintiff, Universal Restoration Services, Inc. ("Universal"), a construction and restoration contractor, to perform mitigation and restoration work on the residence. At that time the debtors, by agreement and as a condition of Universal agreeing to perform the work, pledged the insurance proceeds as Universal's payment for the services. Mr. Hartung executed an authorization to repair (referred to in the record as the "ATR") on June 16, 2008, which read as follows:

> I authorize Universal Restoration Services, Inc., to perform repairs caused by loss on June 7, 2008. I understand that Assurant Insurance, my insurance company, is paying for the repairs to the property damage covered under my policy. I understand that Universal Restoration Services, Inc., is an independent contractor hired by me and not by my insurance company.
>
> I understand and agree to pay Universal Restoration Services, Inc., the full amount of my deductible. I understand and agree to pay Universal Restoration Services, Inc., for any and all repairs or improvements made at my direction which are not covered under my policy. I understand that I am ultimately responsible for payment, even though I am receiving payment via an insurance claim.

2

(Decision, June 7, 2012, Racine County Circuit Court Case No. 10-CV-1308). The debtors received three checks in the total amount of $107,534.06, made payable jointly to the mortgagee and the debtors, from the insurance company for repair of the flood-related damage to their residence. Such funds were placed in an escrow trust account originally not accessible to the debtors, but eventually these funds were accessed by the debtors.

Universal performed the necessary repairs on the residence, for a total cost of $133,856.02, and demanded payment from the debtors out of the insurance proceeds. Shortly before the debtors moved back into the home, a representative from the mortgagee came to the home and Lawrence Hartung signed a release for the funds that stated the debtors were satisfied with the work and the funds would be made available to pay Universal. (Decision, July 10, 2013, Wisconsin Court of Appeals Case No. 2012AP2207). The debtors withdrew the $107,534.06 from the escrow trust account but did not pay any of said funds to Universal. The debtors instead used the funds for personal purposes. (Decision, June 7, 2012, Racine County Circuit Court Case No. 10-CV-1308).

Universal filed a lawsuit against the debtors in the Circuit Court of Racine County, Wisconsin, Case No. 10-CV-1308, alleging multiple counts against the debtors relating to nonpayment of the obligation. A combined bench and jury trial on the merits of all facts relevant to the allegations commenced on January 31, 2012, and ended with a jury verdict in favor of Universal on February 3, 2012.

The state court determined as a matter of law that there was an implied contract between Universal and the debtors in which Universal agreed to perform and provide mitigation and restoration goods and services for the debtors' house and that the debtors agreed to pay Universal

for the reasonable value of such goods and services rendered. (Special Verdict, February 3, 2012, Racine County Circuit Court Case No. 10-CV-1308). The jury deliberated on the breach of contract claim and the claim by the defendants that the plaintiff had done poor work, and found that the reasonable value of the mitigation goods and services provided by Universal was $17,390.42, and the reasonable value of the restoration goods and services provided by Universal was $116,465.60. The jury found that the debtors did not incur any damages because of any defective work performed by Universal. (Special Verdict, February 3, 2012, Racine County Circuit Court Case No. 10-CV-1308).

At the request of the plaintiff, the state court subsequently determined whether or not the entry of judgment in favor of the plaintiff was warranted for claims that were not addressed specifically by the jury: quantum meruit, unjust enrichment, promissory estoppel, equitable lien, conversion, and civil theft. Because the court had previously found that an implied contract existed as a matter of law, the jury verdict rendered the quantum meruit, unjust enrichment, and promissory estoppel theories moot. (Decision, June 7, 2012, Racine County Circuit Court Case No. 10-CV-1308). The state court found insufficient evidence to find the defendants liable for civil theft, and denied the motion to add the claim, noting that such a determination would be more appropriate for a jury.

Regarding the claims for equitable lien and conversion, the state court made the following findings:

> The jury held, and this Court agrees, that there was no valid reason for the defendants not to have paid the plaintiff. The defendants' claim that the plaintiff had breached a contract or had done shoddy work was emphatically rejected by the jury. The jury found, and the Court agrees, that there was no credible evidence placed on the record to substantiate the claims of the defendants.

4

> The defendants received the funds from the insurance company knowing that the purpose of the funds was to pay for repairs done to their house. They had the option of simply depositing the funds in an account to be held until a determination could be made as to the validity of their claim that the plaintiff had done poor workmanship. The defendant, however, chose the option of simply utilizing the funds for personal reasons; including purchase of furniture, personal property, and repayment of at least one loan.
>
> In this particular case, there was an identifiable fund which the [defendants] had control of which was to be utilized for one purpose, and that purpose was to pay the plaintiff for work performed pursuant to the agreement between the plaintiff and the defendant. The defendant dissipated those funds. By law, the plaintiffs are [sic] entitled to an equitable lien, and judgment will be entered on that claim in favor to the plaintiff and against the defendant in the amount of $107,534.06. The Court would note that while it's a judgment on a separate claim, it is part and parcel of the judgment amount and not in addition to the judgment amount.
>
> In addition, the plaintiffs have claimed conversion. The elements of conversion are: One, the intentional control or taking of property belonging to another; two, without the owner's consent; three, resulting in serious interference with the results [sic] of the owner to possess the property.
>
> The problem with the conversion claim is that the property in this case was the insurance proceeds. The Hartungs were initially entitled to the insurance proceeds because it was their policy. Upon satisfactory completion of the work, the funds should have been transferred to the plaintiff. The funds were never transferred to the plaintiff. In looking at Trial Exhibit 50, which is the checks the Hartungs received, it notes that the insured is Chase Home Finance, LLC Automated Flood Account. The claimant is Lawrence D. Hartung. The cause of loss is flood.
>
> The funds, in essence, were the Hartung's. The fact that they were to utilize those funds for the repairs does not mean that a conversion occurred. The Court, therefore, is denying the [plaintiff's] claim for judgment based on the conversion claim.

(Decision, June 7, 2012, Racine County Circuit Court Case No. 10-CV-1308). The state court assessed interest on the judgment at five percent as of the date of the insurance checks, and at twelve percent as of the date of the verdict.

An amended judgment order was entered July 9, 2012, awarding Universal a judgment against the debtors in the amount of $164,130.77, plus additional interest, costs and

disbursements, as well as an equitable lien and constructive trust. The state court found that the debtors received the insurance proceeds "as trustees to hold such money for the sole benefit of Universal Restoration Services, Inc. which was and is the beneficial owner of such property." The court further found that the debtors' use of such funds for personal reasons "constitute[d] a breach of their fiduciary duty to Universal." (Amended Judgment Order, June 9, 2012, Racine County Circuit Court Case No. 10-CV-1308). The Amended Judgment Order also held that the "equitable lien by agreement is ordered to attach to and is impressed upon the American Security Insurance Company funds tendered to Defendants in the amount of $107,534.06 and upon the real and personal property owned by Defendants located at 3125 W. Mile Road, Caledonia, Wisconsin 53108."

The debtors appealed the judgment, arguing the court's amendment converting a previously imposed "equitable lien" to an "equitable lien by agreement" and creating a constructive trust on the same amount was not supported by the court's and jury's findings. The debtors also argued that the trial court failed to address their argument that they were entitled to a reduction in the judgment amount awarded in favor of Universal due to an amount received from co-defendants who settled prior to trial.

From the limited record on appeal, the appellate court noted the following regarding the parties' agreement:

> Lawrence acknowledged that he met with a URS representative and signed the ATR. Both Lorine and Lawrence testified that they intended to use the insurance proceeds to pay URS for its work on their home. The [trial] court found that URS has "a viable claim in a sense that (the Hartungs) were well aware that the insurance proceeds were money that would be set aside for paying somebody who did the repairs" to their home.

(Decision ¶ 10, July 10, 2013, Wisconsin Court of Appeals Case No. 2012AP2207). The

6

Case 12-02359-svk    Doc 34    Filed 01/17/14    Page 6 of 17

appellate court determined that the trial court's finding of the debtors' fiduciary duty to hold the insurance proceeds in trust for payment to Universal was not clearly erroneous.  The findings properly established the debt, res, and agreement necessary to impose an equitable lien by agreement under Wisconsin law.  (Decision ¶ 11, July 10, 2013, Wisconsin Court of Appeals Case No. 2012AP2207).

The appellate court further found that the trial court did not erroneously exercise its discretion when it imposed the constructive trust on the insurance proceeds because all of the elements necessary to impose a constructive trust were present:

> A "constructive trust will be imposed only in limited circumstances" where (1) the legal title is "held by someone who in equity and good conscience should not be entitle to (its) beneficial enjoyment" and (2) where title was "obtained by means of actual or constructive fraud, duress, abuse of a confidential relationship, mistake, commission of a wrong, or by any form of unconscionable conduct." *Wilharms v. Wilharms*, 93 Wis. 2d 671, 678-79, 287 N.W.2d 779 (1980).

(Decision ¶ 15, July 10, 2013, Wisconsin Court of Appeals Case No. 2012AP2207).  Finally, the appellate court found there was no legal basis for the trial court to award an offset in favor of the debtors.

ARGUMENT

The plaintiff argues that no genuine issue of material fact exists as to the underlying facts previously adjudicated in state court and upon which a ruling of nondischargeability can be made.  There was an express trust or technical trust created at the outset of Universal's relationship with the debtors and the debtors willfully and maliciously committed fraud and/or defalcation in their fiduciary capacity.  *See In re Williams*, 233 B.R. 398 (Bankr. N.D. Ohio 1999) (debtor-homeowner acted with requisite intent to cause injury in withdrawing, from joint

7

account into which they had been deposited, insurance proceeds earmarked for payment of home repair contractor's bill was sufficiently supported by evidence).

The state court has already determined that there was an express/technical trust created and a fiduciary duty relationship existed between the debtors and Universal before the debtors withdrew the insurance proceeds from the escrow trust account, commingled it with their own and, without justification, spent it on everything but its intended purpose. The commingling of funds creates the presumption of a fraudulent intent to convert those funds. *See McGeever v. State*, 239 Wis. 87, 300 N.W. 485 (1941) (evidence of attorney's unauthorized intermingling of client's money with other funds and use of client's money for attorney's own benefit and otherwise than for the purpose for which it was left in attorney's possession authorized finding that there existed a fraudulent intent on attorney's part to convert the money to his own use and thus defraud the client, at the time of the unauthorized intermingling and use).

Additionally, the plaintiff argues the state court judgment and findings of fact conclusively establish that the debtors embezzled the insurance proceeds by wrongfully appropriating the funds which had lawfully come into their possession and with which they had been entrusted. *See In re Pawlinski*, 170 B.R. 380, 390 (Bankr. N.D. Ill. 1994) (debt arising from funds advanced by creditor to debtor for purpose of purchasing two limousines and insurance for limousines was nondischargeable for defalcation of entrusted funds, as well as embezzlement and fraud).

The debtors argue Universal is not entitled to summary judgment. The debtors point out that neither the trial nor appellate courts ruled that there was an "express/technical trust." Furthermore, the state court ruled that there was no conversion and no proof of theft and made

8

Case 12-02359-svk    Doc 34    Filed 01/17/14    Page 8 of 17

absolutely no reference to the debtors' state of mind. The debtors also assert that the plaintiff should not be allowed to sneak a claim for fraud in a fiduciary capacity into its motion for summary judgment because it was not adequately plead in the complaint. The complaint instead alleged the plaintiff "suffered an economic loss due to Debtors' failure to turn over funds as a result of Debtor's defalcation while acting as a fiduciary as well as their embezzlement, conversion, and larceny." (Amended Complaint ¶ 43, August 10, 2012). Nothing in the trial court record supports the plaintiff's assertions of fraud or defalcation. *See Bullock v. BankChampaign, N.A.*, __ U.S. __, 133 S.Ct. 1754, 1759, 185 L.Ed.2d 922 (2013). Finally, the debtors argue the plaintiff's assertion of nondischargeability under section 523(a)(6) should be rejected because such claims are dischargeable in chapter 13 cases. 11 U.S.C. § 1328(a)(2).

## DISCUSSION

To prevail on a motion for summary judgment the moving party must show there is no genuine issue of material fact and he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine if there is a genuine issue of material fact, all facts are construed in the light most favorable to the non-moving party. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). Additionally, all reasonable inferences are drawn in favor of that party. *Id*. However, the non-movant must set forth "specific facts showing that there is a genuine issue for trial" which requires more than "just speculation or conclusory statements." *Id*. at 283 (citations omitted).

First, as a matter of full faith and credit a federal court must apply the forum state's law of issue preclusion when it determines the preclusive effect of a state court judgment. 28 U.S.C. § 1738; *Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 136 F.3d 1134, 1136 (7th Cir. 1998). Additionally, the forum state's law of issue preclusion applies in determining the

dischargeability of debt.  *Bukowski v. Patel*, 266 B.R. 838, 842 (E.D. Wis. 2001) (citing *Matter of Bulic*, 997 F.2d 299, 304 n. 6 (7th Cir. 1993)).  Accordingly, whether issue preclusion applies must be determined according to Wisconsin law.

Under Wisconsin law issue preclusion is a doctrine designed to limit relitigation of issues that were contested in a previous action between the same or different parties.  *Michelle T. by Sumpter v. Crozier*, 173 Wis.2d 681, 687, 495 N.W.2d 327, 329 (1993) (citing *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 75 S.Ct. 865 (1955)).  Accordingly, when an issue is actually litigated and determined by a valid final judgment and the determination is essential to the judgment, it is conclusive in a subsequent action whether on the same or a different claim.  *Landess v. Schmidt*, 115 Wis.2d 186, 197, 340 N.W.2d 213, 219 (Ct. App. 1983) (citing Restatement (Second) of Judgments § 27 (1982)).  However, where appropriate a fundamental fairness analysis should be conducted when determining whether it is equitable to apply issue preclusion in a given case.  *Michelle T. by Sumpter*, 173 Wis.2d at 698, 495 N.W.2d at 335.

In Wisconsin courts, issue preclusion is a two-step analysis.  The first step is to determine whether a litigant against whom issue preclusion is asserted is in privity with a party or has sufficient identity of interests to comport with due process.  *Paige K.B. ex rel. Peterson v. Steven G.B.*, 226 Wis.2d 210, 224, 594 N.W.2d 370 (1999).  The Hartungs were parties to all previous actions, so privity is not a question the Court needs to address.

The next step in issue preclusion analysis is whether applying issue preclusion comports with principles of fundamental fairness.  This is generally a discretionary decision, although some of the factors the court is to consider in determining fairness present a question of law.  *Paige K.B.*, 226 Wis.2d at 225, 594 N.W.2d at 377.  The factors that courts may consider when

10

undertaking the second step of issue preclusion are: (1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action? *Michelle T. v. Crozier*, 173 Wis.2d at 689, 495 N.W.2d at 330-31 (footnote omitted). Nothing in the extensive record causes the Court to believe that it would be unfair to apply issue preclusion in this case.

The state court judgment was valid and final, the Hartungs appealed that judgment, and the appellate court affirmed the trial court's ruling. Additionally, although we do not have the complete jury instructions in the record, the burden of proof before the state court required either a preponderance of the evidence or clear and convincing evidence. *See Marquez v. Mercedes-Benz USA, LLC*, 2012 WI 57, ¶ 37, 341 Wis. 2d 119, 139, 815 N.W.2d 314, 324 (noting in most civil cases, the lowest, ordinary burden of proof – a "preponderance of the evidence" – applies and, in Wisconsin, the jury must be satisfied to a reasonable certainty by the greater weight of the credible evidence). So the same or a higher burden of proof was applied in the state court, as compared to the burden required in this adversary proceeding. *Matter of Bero*, 110 F.3d 462, 465 (7th Cir. 1997) ("[T]o prove that a debt is nondischargeable, the creditor bears the burden of proof by a preponderance of the evidence.").

11

Furthermore, preclusion does apply to the *amount* of damages. *See In re Back Bay Restorations, Inc.*, 118 B.R. 166, 169-70 (Bankr. D. Mass. 1990) (bankruptcy courts bound by prior judgments of amount of resulting damages). As defined in the Bankruptcy Code, "'debt' means liability on a claim." 11 U.S.C. § 101(12). The plaintiffs' judgment unarguably is a claim in the bankruptcy case; it is a final and unappealed judgment. While the debtors assert that the plaintiff owes them money, their counter claims were rejected by the jury and cannot be retried. *See Adams v. Adams*, No. 13-1636, __ F.3d __, 2013 WL 6819177 (7th Cir. Dec. 27, 2013) (holding issue preclusion barred debtor from subsequently using bankruptcy system to have his defenses reheard after state court's prior rejection of those defenses). Also, the alleged obligation is not listed as an asset on the debtor's schedules. Since the full amount of a judgment is a valid claim, the total award cannot be modified, and the only issue before this Court is whether it is nondischargeable.

Both parties discussed whether or not the debtors' conduct resulted in a willful and malicious injury. Section 523(a)(6) of the Bankruptcy Code reads in pertinent part "[a] discharge . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or the property of another entity." 11 U.S.C. § 523(a)(6). In chapter 13, a few of the debts listed in section 523(a) are dischargeable if the debtor completes the plan, and others are not. *See* 11 U.S.C. § 1328(a)(2). While section 523(a)(6) is not included in the list of debts that are nondischargeable in chapter 13, debts for damages awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that *caused personal injury to an individual or the death of an individual* are nondischargeable. *See* 11 U.S.C. § 1328(a)(4). Because the damages in this case are to property and not to person, the plaintiff's

12

arguments in favor of a nondischargeable judgment based upon a willful and malicious injury are rejected. *See In re Taylor*, 388 B.R. 115 (Bankr. M.D. Pa. 2008); *In re Derryberry*, 367 B.R. 616 (Bankr. E.D. Tenn. 2007).

Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The elements required to establish a nondischargeable debt for defalcation under this section are: (1) the existence of a trust; (2) the debtor is a fiduciary of that trust; and (3) fraud or defalcation by the debtor while acting as a fiduciary of the trust. In this case, the state court found that the debtors received the insurance proceeds "as trustees to hold such money for the sole benefit of Universal Restoration Services, Inc. which was and is the beneficial owner of such property." The court further found that the debtors' use of such funds for personal reasons "constitute[d] a breach of their fiduciary duty to Universal." (Amended Judgment Order, June 9, 2012, Racine County Circuit Court Case No. 10-CV-1308). The court likened the arrangement as "earmarked funds," similar to a "trust account." In affirming the lower court, the court of appeals noted, "the [trial] court held that the Hartungs had a fiduciary duty to hold the insurance proceeds in trust for payments to URS for its remediation and restoration work on their home. These findings are not clearly erroneous. These findings establish the debt, res, and *agreement* necessary to impose an equitable lien by agreement." (Decision ¶ 11, July 10, 2013, Wisconsin Court of Appeals Case No. 2012AP2207) (emphasis added). Thus, the trust arrangement has been found to exist by the ATR agreement, which predated the existence of the fund and any wrongful taking by the debtors, and which puts the trust and the debtors' fiduciary duty squarely within the ambit of section 523(a)(4).

13

The appellate court further found that the trial court did not erroneously exercise its discretion when it imposed the constructive trust on the insurance proceeds because all of the elements necessary to impose a constructive trust were present:

> A "constructive trust will be imposed only in limited circumstances" where (1) the legal title is "held by someone who in equity and good conscience should not be entitle to (its) beneficial enjoyment" and (2) where title was "obtained by means of actual or constructive fraud, duress, abuse of a confidential relationship, mistake, commission of a wrong, or by any form of unconscionable conduct." *Wilharms v. Wilharms*, 93 Wis. 2d 671, 678-79, 287 N.W.2d 779 (1980).

(Decision ¶ 15, July 10, 2013, Wisconsin Court of Appeals Case No. 2012AP2207). Judge Shapiro already decided (before the Wisconsin Court of Appeals addressed the matter) that a constructive trust, which by definition only arises upon wrongdoing by the debtor, does not fit into the exception to discharge under 11 U.S.C. § 523(a)(4). *In re Berman*, 629 F.3d 761 (7th Cir. 2011) (holding debtor must have been trustee before wrongdoing); *In re Bowles*, 318 B.R. 129 (Bankr. E.D. Wis. 2004) (noting express trust required). This makes the state courts' holding regarding constructive trust surplusage with respect to the case as it now stands. Section 1328(a)(2) excepts from discharge in a chapter 13 case liabilities that would be excepted under section 523(a)(4), but liabilities that might be excepted under section 523(a)(6), such as one that could give rise to a constructive trust for money damages, can be discharged in chapter 13. *See* 11 U.S.C. § 1328(a)(4). If the case is converted to chapter 7, the matter regarding a constructive trust can be revisited.

The Wisconsin courts' findings of both an express trust by agreement and a constructive trust are not mutually exclusive and are consistent with the facts as found by the courts. The trust was created by the ATR agreement, and the debtors' duty was in place prior to the funds being

14

received. When the funds came into their possession, they spent them on things other than to pay the rightful beneficiary, all without proper justification, which also qualifies as a constructive trust. The courts found the debtors' conduct wrongful under either theory and imposed liability under both, with only one recovery, of course.

The state courts having concluded that the debtors owed a fiduciary duty to the Universal, the Court must now determine whether the factual and legal findings are sufficient to conclude that the debtors acted with the requisite state of mind for defalcation under 11 U.S.C. § 523(a)(4).

In *Bullock v. Bank Champaign, N.A.*, __ U.S. __, 133 S.Ct. 1754, 1759, 185 L.Ed.2d 922 (2013), the Supreme Court held that defalcation "includes a culpable state of mind requirement" where the debtor acts with "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Id*. at 1757. The Court explained:

> Thus, where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty. That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a *gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation."

*Id*. at 1759 (internal citations omitted).

Looking at the established facts of this case, the state trial court made the following relevant findings:

> The jury held, and this Court agrees, that there was *no valid reason for the defendants not to have paid the plaintiff*. . . .

15

> The defendants received the funds from the insurance company *knowing that the purpose of the funds was to pay for repairs done to their house*. They had the option of simply depositing the funds in an account to be held until a determination could be made as to the validity of their claim that the plaintiff had done poor workmanship. The defendant, however, *chose the option of simply utilizing the funds for personal reasons*; including purchase of furniture, personal property, and repayment of at least one loan.
>
> In this particular case, there was an identifiable fund which the [defendants] had control of which was to be utilized for one purpose, and that purpose was to pay the plaintiff for work performed pursuant to the agreement between the plaintiff and the defendant. The *defendant dissipated those funds*. . . .

(Decision, June 7, 2012, Racine County Circuit Court Case No. 10-CV-1308) (emphasis added).

The appellate court affirmed the trial court and noted the following regarding the parties' agreement:

> Lawrence acknowledged that he met with a URS representative and signed the ATR. Both Lorine and Lawrence testified that they intended to use the insurance proceeds to pay URS for its work on their home. The [trial] court found that URS has "a viable claim in a sense that (the Hartungs) were well aware that the insurance proceeds were money that would be set aside for paying somebody who did the repairs" to their home.

(Decision ¶ 10, July 10, 2013, Wisconsin Court of Appeals Case No. 2012AP2207). This finding shows the debtors deliberately and without justification took money intended for URS. This is a "gross deviation from the standard of conduct that a law-abiding person would observe" in this situation and meets the *Bullock* standard for an exception to discharge under section 523(a)(4), and accordingly section 1328(a)(2).

The appellate court further found that the trial court did not erroneously exercise its discretion when it imposed the constructive trust on the insurance proceeds because all of the elements necessary to impose a constructive trust were present:

> A "constructive trust will be imposed only in limited circumstances" where (1) the legal title is "held by someone who in equity *and good conscience* should not be entitle to (its) beneficial enjoyment" and (2) where title was "*obtained by means of actual or*

> *constructive fraud, duress, abuse of a confidential relationship, mistake, commission of a wrong, or by any form of unconscionable conduct.*" *Wilharms v. Wilharms*, 93 Wis. 2d 671, 678-79, 287 N.W.2d 779 (1980).

(Decision ¶ 15, July 10, 2013, Wisconsin Court of Appeals Case No. 2012AP2207) (emphasis added). Even though the imposition of a constructive trust is not the standard upon which this exception to discharge is being decided, it is further support for the trial court's finding that the debtors had no excuse for taking the money meant for Universal under the parties' agreement. A finding of unconscionable conduct was necessary to impose a constructive trust, and it is also consistent with this Court's finding that the same conduct supports the culpability standard under *Bullock*.

Therefore, the state court findings are entitled to preclusive effect, and the plaintiff is granted partial summary judgment. The debt owed by the debtors to the plaintiff is excepted from discharge under 11 U.S.C. §§ 523(a)(4) and 1328(a)(2). A separate order will be entered accordingly. Further proceedings will be scheduled to address other matters included in this adversary proceeding.

January 17, 2014

                                          Margaret Dee McGarity
                                          United States Bankruptcy Judge